IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

NICKSON JOSEPH,

          Movant,

    v.

UNITED STATES OF AMERICA,

          Respondent.

CIVIL ACTION NO.: 2:23-cv-43

(Case No.: 2:21-cr-6)

## REPORT AND RECOMMENDATION

Movant Nickson Joseph ("Joseph") filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255.  Doc. 1.  Respondent filed a Motion to Dismiss, and Joseph filed a Response.  Docs. 6, 8.[1]  For the following reasons, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DENY** Joseph's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Joseph a Certificate of Appealability and *in forma pauperis* status on appeal.

## BACKGROUND

Joseph and a co-defendant were indicted for: conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. § 846 (count 1); possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (count 4); distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (counts 5–10); maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1) (count 11); and

---

[1]    Joseph's Response at Docket Number 9 is duplicative of his Response at Docket Number 8.

possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C.

§ 924(c) (count 12).  United States v. Joseph, Case No. 2:21-cr-3 ("Crim. Case"), ECF No. 220.[2]

If convicted, Joseph faced a sentence of: at least 10 years and up to life in prison on the

conspiracy count; not more than 20 years' imprisonment on counts 4 through 7 and 9 through 11;

not more than 5 years on count 8; and not less than 5 years and up to life in prison on the firearm

offense (count 12), to be served consecutively to any other sentence.  Crim. Case, ECF No. 221.

The Government advised the Court that Joseph wished to enter a plea agreement, whereby he

agreed to plead guilty to a lesser included offense on count 1 of the superseding indictment.

Crim. Case, ECF Nos. 263, 297.  Joseph was then subject to no more than 20 years in prison.

Crim. Case, ECF No. 297, p. 4.  Judge Wood conducted a Rule 11, or change of plea, hearing.

Crim. Case, ECF No. 296.

At the outset, Judge Wood informed Joseph the purpose of the hearing was to ensure he

understood the case pending against him and all of the rights he would waive if Judge Wood

accepted his plea, there was a factual basis for the finding of guilt on the charge to which he was

pleading guilty, and pleading guilty was what Joseph wanted to do.  Crim. Case, ECF No. 343,

pp. 2–3.  Joseph affirmed no one was making him, pushing him, or leaning on him to change his

plea.  Id. at 3.  During the plea hearing, Assistant United States Attorney ("AUSA") Noah

Abrams provided the factual basis for Joseph's plea agreement by calling Drug Enforcement

Agency Task Force Officer Ryan Alexander ("TFO Alexander") to testify.  Id. at 23–28.  Joseph

stated that he disputed TFO Alexander's testimony about the money that was recovered because

he had taken a loan out for the money and no drugs were found on his person.  Id. at 29–30.

---

[2]    Joseph was originally indicted with six co-defendants.  Crim. Case, ECF No. 3.  Joseph and one of those co-defendants were the only two defendants named in the superseding indictment.  Crim. Case, ECF No. 220.  Joseph was not named in count 2 or count 3.

However, Judge Wood clarified TFO Alexander testified law enforcement officials found money and the gun, which Joseph did not dispute.  Id. at 30.  After Joseph and his retained counsel, Jason Clark, spoke for a few moments, Mr. Clark clarified Joseph still wished to plead guilty to the lesser included conspiracy count.[3]  Id. at 31–32.  Judge Wood explained that Joseph could argue about the details of the count at sentencing if he still wished to plead guilty, and she also reviewed the essential elements the Government would have to prove.  Id. at 32–33.  Joseph stated he wanted to plead guilty to the lesser included offense of count 1 and admitted the essential elements were true and satisfied.  Id. at 33–34.  Judge Wood accepted Joseph's guilty plea, adjudged him guilty of the lesser included of count of the superseding indictment, and directed the United States Probation Office to prepare a pre-sentence investigation report ("PSR").  Id. at 34.

Judge Wood conducted Joseph's sentencing hearing on April 25, 2022.  Crim. Case, ECF No. 320.  Judge Wood reminded Joseph he appeared with Mr. Clark for the Rule 11 hearing and she directed the Probation Office to prepare a PSR.  Crim. Case, ECF No. 342, p. 2.  After allowing a recess for Joseph and his attorneys to read and discuss the PSR, Mr. Braun informed the Court Joseph wished to file a motion to withdraw his plea against his attorneys' advice.  Id. at 5–6; Crim. Case, ECF No. 318.  Judge Wood allowed Mr. Braun to speak on the motion, and Mr. Braun noted he and Mr. Clark did not think Joseph provided a substantial ground for the motion, though Joseph's "posture changed" as to his guilty plea once his wife (and an original co-defendant) entered a plea agreement.  Crim. Case, ECF No. 342, pp. 6–7.  Mr. Braun stated Joseph had already admitted to the Court and the probation officer he was guilty of the lesser included offense, so he could not present a viable claim of innocence.  Id. at 7.  In addition, Mr.

---

[3]    Joseph initially had counsel appointed to him, but he later retained Jason Clark and Richard Braun.  Crim. Case, ECF Nos. 26, 97, 98.

Braun noted the delay to the Government likely cut against Joseph and there was no basis for a claim the plea was tainted. Id. Judge Wood allowed Joseph the opportunity, if he wanted to add anything to what Mr. Braun said, and Joseph addressed the Court. Id. at 8–12. AUSA Abrams provided counterargument. Id. at 12. Judge Wood then stated she had considered the requirements of Federal Rule of Criminal Procedure Rule 11(d)(2) (the Rule governing motions to withdraw a guilty plea) and stated, "[I]it is clear that the motion must be denied, and I understand completely why the defense attorneys were hesitant to file it." Id. at 13.

Judge Wood had already adopted the probation officer's factual statements and conclusions about the applicable advisory Sentencing Guidelines, resulting in a total offense level of 30 and a criminal history category of I. Id. at 4. The Guidelines range was 97 to 121 months' imprisonment. Id. Mr. Braun offered argument on Joseph's behalf in mitigation of sentence. Id. at 14–16. The AUSA presented argument in support of the recommended Guidelines range. Id. at 18–19. Judge Wood gave Joseph the opportunity to address the Court, and he stated, "Nothing will change anything, Your Honor." Id. at 20. Judge Wood then informed Joseph she had read the PSR, looked at the entire record, listened to the attorneys and Joseph, and thought about the 18 U.S.C. § 3553 factors, particularly the nature of the offender and offense, the need for a deterrent effect and promotion of respect for the law, and the need to avoid unwarranted sentencing disparities. Id. at 20–21. Based on all of these factors, Judge Wood sentenced Joseph to a 110-month sentence. Id. at 21. Judge Wood reminded the parties of Joseph's appeal and collateral attack waivers contained in the plea agreement. Id. at 24.

Joseph filed the instant § 2255 Motion. Doc. 1. The Government filed a Motion to Dismiss. Doc. 6. Joseph filed a Response. Doc. 8. This matter is fully briefed and ready for review.

**DISCUSSION**

I.    **The Waiver Provisions in Joseph's Plea Agreement Bar His Rule 6 Claims**

Joseph states the indictment against him is illegal because there is no proof on the docket a grand jury voted to indict him. Doc. 1 at 3. Joseph also states the grand jury foreperson must sign the true bill for indictment and present it in open court. Id. Joseph contends the Government bypassed the requirements of Federal Rule of Criminal Procedure 6(c) and (f) regarding the grand jury presentment, which stripped this Court of jurisdiction. Id. at 4–5. As a result, Joseph maintains this Court's judgment must be vacated. Id. at 5–6.

In response, the Government states the indictment and superseding indictment against Joseph were returned in open court, as the foreperson signed each indictment and a judicial officer conducted the returns in open court. Doc. 6 at 8. The Government also states any claims regarding a defect in the indictment are procedurally defaulted because Joseph did not raise these issues on appeal and cannot show cause and prejudice to overcome his default. Id. at 9–13. Moreover, the Government states the waiver provisions contained in Joseph's plea agreement bar any Rule 6 claims and Joseph entered his plea knowingly and voluntarily. Id. at 13–16.

After pleading guilty, a defendant can only attack his resulting conviction in "strictly limited" circumstances. Bousley v. United States, 523 U.S. 614, 621 (1998). A § 2255 challenge to a conviction by guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack." United States v. Broce, 488 U.S. 563, 569 (1989) (finding constitutional defendant could not raise double jeopardy claim on collateral attack following guilty plea); see also Jordan v. United States, CV118-142, 2019 WL 4879136, at *8 (S.D. Ga. Aug. 5, 2019) (noting record verified movant's agreement to collateral attack

waiver of all claims other than ineffective assistance of counsel was knowing and voluntary and barred claims covered by that waiver); in turn citing Carstarphen v. United States, Civ. Action No. 07-0417, 2008 WL 4369010, at *2–3 (S.D. Ala. Sept. 25, 2008) (barring review of claims of prosecutorial misconduct based on valid collateral attack waiver)).

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary.  United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987).  To determine whether a guilty plea was made knowingly and voluntarily, a court must specifically "address . . . three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea."  United States v. Lambert, 777 F. App'x 336, 339 (11th Cir. 2019) (quoting United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005)).

In addition, a defendant must live with what he has told a court under oath.  A defendant's sworn testimony to the trial judge in open court is presumed to be truthful.  In the context of a plea hearing, the United States Supreme Court has stated, "[T]he representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."  Blackledge v. Allison, 431 U.S. 63, 73–74 (1977).  The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise.  Id.

Joseph and his attorneys were able to negotiate a plea agreement with the Government whereby Joseph agreed to plead guilty to a lesser included offense of the conspiracy charge (count 1 of the superseding indictment).  Crim. Case, ECF Nos. 263, 296, 297.  In exchange, the

Government agreed to not object to a recommendation Joseph receive a three-point reduction in offense level and to move to dismiss the remaining counts of the superseding indictment against Joseph.  Crim. Case, ECF No. 297, pp. 4–5, 7.  The plea agreement set forth the statutory elements and factual basis of the offense to which Joseph was pleading guilty.  Id. at 1–3. Joseph agreed he was guilty of the offense.  Id. at 2.  Additionally, Joseph agreed no one had promised him a particular sentence or range and the Court could impose a sentence up to the statutory maximum sentence but would look to the Sentencing Guidelines and sentencing factors of 18 U.S.C. § 3553(a).  Id. at 3–4.  This plea agreement also contained a collateral attack waiver provision, which states: "Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion.  The only exception is that Defendant may collaterally attack his conviction and sentence based on a claim of ineffective assistance of counsel."  Id. at 11.  Further, Joseph affirmed he had read and reviewed the agreement with his attorneys, understood the provisions of the agreement, voluntarily agreed to it, and stipulated to the factual basis as being true and accurate.  Id. at 15.

Joseph appeared before Judge Wood for his Rule 11 hearing.  Crim. Case, ECF Nos. 296, 298, 343.  Judge Wood informed Joseph the purpose of the hearing was to ensure he understood the case pending against him and all of the rights he would waive if Judge Wood accepted his plea, there was a factual basis for the finding of guilt on the charges to which he was pleading guilty, and pleading guilty was what Joseph wanted to do.  Crim. Case, ECF No. 343, pp. 2–3. Joseph affirmed no one was making him, pushing him, or leaning on him to change his plea.  Id. at 3.

After Joseph was sworn in, Judge Wood asked Joseph to provide biographical information, including his age, educational background, and work history. Id. at 4–6. Joseph stated he had never been diagnosed with a mental or physical disability, though he was on a few medications after being shot in the leg many years prior. Id. at 6–7. Joseph noted he had not had any drugs or alcohol within 48 hours of the Rule 11 hearing. Id. at 8. Judge Wood explained that Joseph did not have to plead guilty and if he chose to persist in his not guilty plea, he would have the right to: a public and speedy trial by jury; a presumption of innocence that would follow throughout that trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on his behalf; and testify himself or remain silent. Id. at 8–9. However, Judge Wood cautioned Joseph he would be waiving these rights if he pleaded guilty and she accepted that guilty plea. Id. at 9. Joseph confirmed that he understood. Id. Judge Wood also wanted Joseph to know there was no rush on things and if he had any questions or needed clarification, he should ask Judge Wood to clarify. Id. at 10–11. Joseph also stated he and Mr. Clark discussed the facts and the law pertaining to his case, the superseding indictment filed against him, the proposed plea agreement, and application of the advisory Sentencing Guidelines in general terms. Id. at 11. When Judge Wood asked Joseph whether he was satisfied with Mr. Clark's representation, he replied he was and had no complaints whatsoever about Mr. Clark. Id. at 12.

Judge Wood reviewed the superseding indictment with Joseph and the essential elements of the crime charged in count 1 of that indictment—conspiracy. Id. Judge Wood noted that under the agreement the parties wished to enter Joseph agreed to plead guilty to a lesser included offense on count 1 of the superseding indictment: conspiracy to possess a mixture or substance containing a detectable amount of heroin and alprazolam. Id. at 13. Judge Wood also noted that

8

for Joseph to be convicted of the lesser included offense the Government would have to prove beyond a reasonable doubt the three essential elements of this offense: (1) two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess with the intent to distribute and to distribute a mixture or substance containing a detectable amount of heroin, which is a Schedule I controlled substance, and alprazolam, which is a Schedule IV controlled substance; (2) Joseph knew the unlawful purpose of the plan and willfully joined it; and (3) the object of the unlawful plan was to possess with the intent to distribute and to distribute controlled substances.  Id. at 14–15.  By pleading guilty, Judge Wood noted Joseph was admitting the essential elements of the crime to which he intended to plead guilty were satisfied.  Id.  Judge Wood advised Joseph of the maximum sentence she could impose and ensured Joseph understood the maximum sentence she could impose was 20 years in prison.  Id. at 15.  Moreover, Judge Wood explained to Joseph, in imposing a sentence upon him, she would have to take into consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.  Id. at 16.  In her consideration of his sentence, Judge Wood also explained some of the "major factors" she would have to take into account were Joseph's criminal history, his role in the offense, and whether he was truthful and accepted responsibility for his actions.  Id.  Joseph affirmed no one had promised him an exact sentence and his attorneys had his permission to negotiate a plea agreement with the Government.  Id. at 17.

Judge Wood asked the AUSA to summarize the provisions of the plea agreement.  AUSA Abrams stated:

> The defendant agrees to plead guilty to the lesser included offense contained in [c]ount 1 of the superseding indictment.  Additionally he agrees to the accuracy of the facts that are contained in the plea agreement.

> The Government will not object to a recommendation by the United States Probation Office that he receive an appropriate reduction in offense level for

acceptance of responsibility pursuant to [§] 3E1.1(a) of the [S]entencing [G]uidelines, and if his offense level is 16 or greater prior to any reduction for acceptance of responsibility, the Government will move for an additional one-level reduction in offense level pursuant to [§] 3E1.1(b). The parties agree to recommend to the United States Probation Office and [t]he Court at sentencing that for purposes of the relevant conduct under 2D1.1 of the [S]entencing [G]uidelines that the offense involved at least 400 grams but less than 700 grams of heroin.

The parties agree that there's a factual basis for the following adjustments based on specific offense characteristics: That the defendant receive a two-level increase for possessing a firearm pursuant to United States Sentencing Guideline [§] 2D1.1(b)(1), that he receive a two-level increase for maintaining a premises for distributing controlled substances, pursuant to United States Sentencing Guideline [§] 3D1.1(b)(12), and that he receive a three-level increase as a manager or supervisor but not an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive pursuant to United States Sentencing Guideline 3B1.1(a).

. . . .

At sentencing, the Government will dismiss any pending counts related against this defendant in this case. Defendant agrees to forfeit pursuant to [21 U.S.C. §] 853 and [18 U.S.C. §] 924(d) and [28 U.S.C. §] 2461(c) his interest in any property constituting or derived from any proceeds obtained directly or indirectly as a result of his conviction in this case as outlined in the indictment and the plea agreement.

There is an appeal waiver, Your Honor, as well as a collateral attack of his conviction waiver. Furthermore, Defendant waives all rights to request information about the investigation and prosecution of his case under the Freedom of Information Act or the Privacy Act, and he waives the protections of Rule 11 of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence.

If he fails to plead guilty or later withdraws his guilty plea, all statements made by him in connection with that plea and any leads derived therefrom shall be admissible for any and all purposes.

Id. at 17–20. Judge Wood asked Mr. Clark and Joseph if AUSA Abrams's summarization of the

plea agreement was consistent with the agreement Mr. Clark negotiated and Joseph read and

signed, and they stated it was. Id. at 20. Joseph affirmed no one had made him any promises

about the outcome of his case, other than the provisions of his plea agreement. Id.

Judge Wood discussed the appellate rights waiver contained in the plea agreement by which Joseph agreed to waive his right to a direct appeal of his conviction and sentence on any ground.  Judge Wood noted there were three exceptions to this waiver: if she sentenced him above the statutory maximum; if she sentenced him above the advisory Guidelines range she found; or if the Government filed a direct appeal.  Id. at 20–21.  Joseph understood he waived all other direct appeal rights.  Id. at 21.  Judge Wood also explained the agreement contained a collateral attack waiver: "'Defendant entirely waives his right to collaterally attach his conviction and sentence on any ground and by any method[,] including but not limited to a 28 [U.S.C. §] 2255 motion[,]'" other than based on a claim of ineffective assistance of counsel.  Id. (quoting Crim. Case, ECF No. 297, p. 11).  Joseph stated he understood that waiver and had no questions about it.  Id.

Judge Wood then asked Joseph whether he wished to plead guilty to the lesser included offense of count 1 of the superseding indictment because he was in fact guilty of this offense, and he answered in the affirmative.  Id. at 22.  Judge Wood also asked Joseph whether he understood the rights and privileges he was waiving if she accepted his plea, and he said he did.  Id.  Judge Wood determined Joseph's offer to plead guilty was "knowing" and "voluntary."  Id. at 22–23.  Joseph agreed, and Judge Wood approved the plea agreement.  Id. at 23.

Next, TFO Alexander provided a factual basis for the plea.  Id. at 23–29, 33.  Mr. Clark asked a few questions of TFO Alexander.  Joseph stated he did not dispute TFO Alexander's testimony.  To the extent Joseph disputed certain details of the offense charged, Judge Wood made it clear TFO Alexander's testimony went to the essential elements of the lesser included offense and what the Government would have to prove at trial, not to the details of those essential elements or the manner in which the elements were accomplished.  Id. at 29–33.

Joseph stated he wanted to plead guilty and admitted the essential elements were "true and satisfied." Id. at 33–34. Judge Wood accepted Joseph's guilty plea, adjudged him guilty of the lesser included offense of count 1 of the superseding indictment, and advised Joseph a probation officer would prepare a PSR. Id. at 34–35.

To be clear, Judge Wood informed Joseph at the outset of the Rule 11 hearing the purpose of the hearing was for him to understand the case that was pending against him, the rights he was waiving by pleading guilty, the factual basis for his plea, and whether pleading guilty was what Joseph wanted to do after consultation with his attorneys. After being asked to swear under penalty of perjury to tell the truth at his Rule 11 hearing, Joseph averred no one was forcing him to plead guilty and pleading guilty was what he wanted to do. Judge Wood discussed the specific rights Joseph was afforded if he chose to persist with a not guilty plea and advised Joseph he would waive those rights if he pleaded guilty and she accepted his plea. Joseph stated he had spoken with his attorneys about the facts and law of his case, including the plea agreement. Joseph verified AUSA Abrams's summary of the plea agreement was consistent with the plea he had signed. Judge Wood asked Joseph whether he wanted to plead guilty because he was, in fact, guilty of the lesser included offense of count 1 of the superseding indictment, and he answered in the affirmative. Joseph declared he understood the rights and privileges he was waiving by pleading guilty and proceeded to do so. Judge Wood determined Joseph's guilty plea was knowing and voluntary. TFO Alexander then provided a factual basis for Joseph's plea, and Joseph agreed with the Government's factual basis. Judge Wood accepted Joseph's plea and adjudged him guilty of the lesser included offense of count 1 of the superseding indictment. See Crim. Case, ECF No. 343. In so doing, Judge Wood addressed the "three core principles" required during a Rule 11 hearing. Lambert, 777 F. App'x at 339.

Because Joseph's guilty plea was knowing and voluntary and Judge Wood ensured Joseph understood he was waiving his right to collaterally attack his conviction or sentence in any manner, other than on a claim of ineffective assistance of counsel, the collateral waiver provisions of Joseph's plea preclude review of his claims regarding an alleged faulty indictment and the Court's lack of jurisdiction.  Thus, the Court should **GRANT** this portion of Respondent's Motion to Dismiss and **DENY** these portions of Joseph's § 2255 Motion.[4]

## II.    Joseph's Claims of Ineffective Assistance of Counsel Are Without Merit

A movant bears the burden of showing entitlement to relief under § 2255.  Beeman v. United States, 871 F.3d 1215, 1222 (11th Cir. 2017).  A movant is not entitled to relief if his claims "are merely conclusory allegations unsupported by specifics, contentions that are wholly incredible on the face of the record, or so patently frivolous as to warrant summary dismissal." Adams v. United States, No. 19-11068-C, 2019 WL 4643730, at *1 (11th Cir. Aug. 20, 2019) (citing Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citations omitted)).

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings.  Strickland v. Washington, 466 U.S. 668 (1984).  This right extends to the right to proceed to trial, see Carver v. United States, 722 F. App'x 906 (11th Cir. 2018), and during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient

---

[4]    Because Joseph's collateral attack waiver bars three of his claims, I decline to address Respondent's alternative grounds for dismissal in this Section (i.e., the indictments were returned in open court, Joseph's claims are procedurally defaulted because he did not raise these three claims on appeal, and Joseph waived claims based on non-jurisdictional defects).  However, I give brief discussion to Joseph's claimed Rule 6(f) errors, to the extent Joseph contends his attorneys' failure to raise Rule 6(f) errors constitutes ineffective assistance of counsel in § II.A.

performance.  <u>Strickland</u>, 466 U.S. at 685–86.  The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  <u>Hill v. Lockhart</u>, 474 U.S. 52, 56 (1985).  There is a strong presumption counsel's conduct fell within the range of reasonable professional assistance.  <u>Davis v. United States</u>, 404 F. App'x 336, 337 (11th Cir. 2010) (citing <u>Strickland</u>, 466 U.S. at 686).  "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'"  <u>LeCroy v. United States</u>, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting <u>Butcher v. United States</u>, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)).  "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> (internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense."  <u>Id.</u> at 1312–13.  "The likelihood of a different result must be substantial, not just conceivable."  <u>Harrington v. Richter</u>, 562 U.S. 86, 112 (2011).  "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  <u>LeCroy</u>, 739 F.3d at 1312 (quoting <u>Strickland</u>, 466 U.S. at 690).  "If a petitioner cannot satisfy one prong, [a court] need not review the other prong."  <u>Duhart v. United States</u>, 556 F. App'x 897, 898 (11th Cir. 2014).  "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance."  <u>Demar v. United States</u>, 228 F. App'x 940, 950 (11th Cir. 2007).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. "The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." James v. Sec'y, Dep't of Corr., No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11, 2013) (citing Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)); Body v. United States, Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92. In order to establish actual prejudice, a petitioner must show "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." Armstead v. Scott, 37 F.3d 202, 207 (5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

### A.     Failure to Challenge Alleged Rule 6(f) Violation

Joseph contends his attorneys' failure to investigate his case caused him prejudice because he was sentenced on a defective indictment and he is innocent of the charges contained in the defective indictment.[5] Doc. 1 at 8. Respondent states Joseph's attorneys were not obligated to raise meritless arguments, such as Joseph's Rule 6 arguments. Doc. 6 at 16.

---

[5]     As noted above, Joseph contends the indictments were defective because there is no proof the grand jury voted to indict him, the foreperson failed to sign the true bill for the indictment or present it in open court, and the Government bypassed the requirements of the Federal Rule of Criminal Procedure 6. Doc. 1 at 3–6.

The court will appoint a foreperson of a grand jury, and the foreperson will sign all indictments. Fed. R. Crim. P. 6(c). The grand jury or the foreperson "must return the indictment" in open court. Fed. R. Crim. P. 6(f). Both the indictment and superseding indictments were true bill indictments, Crim. Case, ECF Nos. 3, 220. What is more, this Court verified the grand juries which issued the indictment and superseding indictment consisted of at least 16 but not more than 23 members and at least 12 members of the jury voted for a true bill on the indictment and superseding indictment. Docs. 6-1, 6-2. Joseph fails to show the indictment and superseding indictment were not returned in open court or that any other Rule 6 error occurred and, as a result, he cannot show he was prejudiced by his attorneys' failure to raise any alleged Rule 6 violation.[6] Joseph does not set forth a viable ineffective assistance of counsel claim in this regard. Thus, the Court should **GRANT** this portion of Respondent's Motion and **DENY** this ground of Joseph's § 2255 Motion.

### B.    Failure to Object to Sentencing Guidelines

Joseph asserts his attorneys were ineffective because they failed to object to the "improper application and calculation" of his Sentencing Guidelines range. Doc. 1 at 7. According to Joseph, "[a]nyone of basic level of competence would have apprised himself of the law regarding" the Guidelines and objected to the improper application, resulting in a more favorable sentence. Id.

Respondent asserts Joseph's contention is conclusory and speculative and cannot provide relief under § 2255. Doc. 6 at 17. In addition, Respondent argues that Joseph fails to explain

---

[6]     Joseph insists there is no "proof" on the docket sheet that the grand jury voted to indict him. Doc. 1 at 4; Doc. 8 at 7. This contention is directly contradicted by the Court's records. The indictment and superseding indictment are both true bills and are signed by the forepersons of the grand juries and are available on the Court's electronic docket. Crim. Case, ECF Nos. 3, 220; see also Docs. 6-1, 6-2.

what Guideline calculation his attorneys should have objected to or how his Guidelines range would have differed had his attorneys lodged an objection.  Id.

As noted, a movant bears the burden of showing entitlement to relief under § 2255. Beeman, 871 F.3d at 1222.  A movant is not entitled to relief if his claims "are merely conclusory allegations unsupported by specifics, contentions that are wholly incredible on the face of the record, or so patently frivolous as to warrant summary dismissal."  Adams, 2019 WL 4643730, at *1 (11th Cir. Aug. 20, 2019).  Joseph's claim of ineffective assistance of counsel relating to the Guidelines is too vague and conclusory to warrant relief under § 2255.  Joseph does not state what Mr. Clark or Mr. Braun should have done differently or how a hypothetical challenge to the Guidelines calculation would or could have affected the result of his criminal proceedings.  Id. (citing Beeman, 871 F.3d at 1222; and then citing Tejada, 941 F.2d at 1559); see also Strickland, 466 U.S. at 687 (noting that to demonstrate ineffective assistance, a movant must show deficient performance and prejudice).  Joseph is not entitled to relief on this ground.

## C.     Failure to File a Notice of Appeal

In his original Motion, Joseph mentions in passing that his counsel failed to file a notice of appeal on his behalf, despite Joseph's instruction.  Doc. 1 at 1–2.  In his Response to the Motion to Dismiss, Joseph makes a similar statement.  Doc. 8 at 7.  Despite these statements, Joseph does not clearly raise the failure to file a notice of appeal as an independent ground for relief.  The Court addresses this contention for the sake of completeness.[7]

---

[7]      To the extent Joseph is even raising a challenge about the notice of appeal, I construe it as a claim of ineffective assistance of counsel.  Any other claim based on the lack of a notice of appeal would be waived.  As discussed at length of § I of this Report, Joseph entered into a plea agreement with the Government and the agreement contained an appeal waiver, except for three limited exceptions.  Joseph entered into this plea and agreed to the appeal waiver knowingly and voluntarily.  It is well settled that waiver of appeal provisions in plea agreements are enforceable if the waivers are knowing and voluntary. United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008) (citing United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001)); Williams v. United States, 396 F.3d 1340, 1341 (11th Cir. 2005).

"Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). "Even assuming that a rational defendant would not have wanted to appeal the case, [where a defendant] expressly communicated to his attorney his desire to appeal . . .[,] Flores-Ortega mandates that the attorney conduct a specific type of consultation, informing his client about the advantages and disadvantages of appealing and making a reasonable effort to determine the client's wishes." Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005).

It also is well settled that an attorney's failure to file a requested notice of appeal is per se ineffective assistance of counsel. Flores-Ortega, 528 U.S. at 470, 483–86; Gaston v. United States, 237 F. App'x 495, 495 (11th Cir. 2007). A defendant claiming ineffective assistance on that basis need not demonstrate an ability to raise meritorious issues on appeal. Flores-Ortega, 528 U.S. at 477–78. Instead, he can prove ineffective assistance by showing a "reasonable probability" he would have timely appealed had counsel not failed to file an appeal on his behalf. Id. at 484. Further, even where a defendant has signed a waiver of direct appeal as part of his plea agreement (as Joseph did in this case), he has no burden to show the issue he would have raised on appeal falls outside of that waiver. Gaston, 237 F. App'x at 497; Gomez-Diaz, 433 F.3d at 793.

The post-conviction consultation certificate Joseph signed on April 25, 2022, reflects Joseph told Mr. Clark and Mr. Braun that he did not want to file an appeal. Crim. Case, ECF No. 319. Through that notice, Mr. Clark and Mr. Braun certified—and Joseph agreed—they met with Joseph, explained to Joseph the appellate process and his rights to appeal his conviction and

sentence, advised Joseph of the advantages and disadvantages of filing an appeal, and thoroughly asked Joseph about his interest in appealing.  Id.  After this consultation, Joseph certified his agreement with these statements by printing and signing his name.  Id.  Joseph has not denied any of the contents of this certificate or otherwise contested the validity of this certificate in any of his pleadings.  In addition, Joseph does not assert there is a reasonable probability he would have filed a timely notice of appeal or that Mr. Clark and Mr. Braun failed to have a "specific type of consultation" with him regarding an appeal.  Gomez-Diaz, 433 F.3d at 792.

The certificate shows Messrs. Clark and Braun fully explained the appellate process to Joseph, apprised Joseph of the advantages and disadvantages of an appeal, fully informed him of the consequences of that decision (including in a § 2255 proceedings like this), and attempted diligently to ascertain his wishes.  It also shows Joseph expressly instructed his attorneys not to file an appeal.  Cf. Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) ("[A] prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea . . . .  [Consequently,] the representations of the defendant . . . constitute a formidable barrier in any subsequent collateral proceedings." (quoting Blackledge v. Allison, 431 U.S. 63, 71–74 (1977))); Rosin v. United States, 786 F.3d 873, 878 (11th Cir. 2015) ("It is well[]settled that the district court is not required to grant an evidentiary hearing when the defendant s claims are affirmatively contradicted by the record evidence, nor is a hearing required if the claims are grounded upon generalizations that are unsupported by the record evidence.").  In short, the undisputed post-conviction consultation certification establishes Joseph's informed decision not to take an appeal and thwarts any claim Joseph may have made counsel was ineffective for failing to file an appeal.  See Eubank v. United States, No. CR414-005, 2016 WL 750344, at *1 (S.D. Ga. Feb. 25, 2016), report and recommendation adopted, 2016 WL 1464578 (S.D. Ga. Apr.

13, 2016), <u>certificate of appealability denied</u>, No. 16-11933-F, 2016 WL 6246827 (11th Cir. Oct. 25, 2016) (denying § 2255 motion where movant faulted her lawyer for failing to directly appeal but notice of post-conviction consultation certification memorialized her informed decision not to take an appeal); Valencia v. United States, Civil Action No.: 2:18-cv-80, 2021 WL 3672238, at *9–10 (S.D. Ga. July 29, 2021) (same), report and recommendation adopted, 2021 WL 3674075 (S.D. Ga. Aug. 18, 2021); see also Price v. United States, No. CR614-016, 2017 WL 525869, at *4 (S.D. Ga. Feb. 8, 2017), report and recommendation adopted, 2017 WL 1393058 (S.D. Ga. Apr. 11, 2017) (notice of post-conviction consultation certification and attorney's affidavit regarding same rebut § 2255 claim counsel neglected to apprise movant of the advantages and disadvantages of filing direct appeal).

For these reasons, the Court should **DENY** Joseph's claim that Mr. Clark and Mr. Braun rendered ineffective assistance by failing to file a notice of appeal on his behalf, to the extent he even makes such a claim.

## III.    Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Joseph leave to appeal *in forma pauperis*.  Though Joseph has not yet filed a notice of appeal, it would be appropriate to address this issue in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or

argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued.  Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right.  The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Id.  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000).  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims."  Miller-El, 537 U.S. at 336.

Based on the above analysis and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability.  If the Court adopts this recommendation and denies Joseph a Certificate of Appealability, Joseph is advised he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts.  Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith.  Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DENY** Joseph's § 28 U.S.C. § 2255 Motion.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Joseph *in forma pauperis* status on appeal and a Certificate of Appealability.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to

file timely, written objections.  <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 13th day of December, 2024.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA